EAST *v.* SOUTHERN COTTON OIL CO.

Opinion delivered December 18, 1916.

1. APPEAL AND ERROR—MOTION FOR NEW TRIAL MUST APPEAR, WHERE—PRACTICE.—Although the motion for a new trial should not appear in the bill of exceptions, when it does so appear and there is no contention that it is improperly set out, the court, on appeal, will treat it as though it appeared in the proper place in the transcript.

2. APPEAL AND ERROR—UNNECESSARY ACT BY TRIAL COURT—EXCEPTION. Where an unnecessary act is done by the trial court it is not necessary to except to it; so when the trial court sustained a demurrer to certain paragraphs in appellant's answer and cross-complaint, and the appellant duly excepted to such action, the act of the trial court also striking out the said paragraphs is surplusage.

3. FACTORS AND BROKERS—REPLEVIN BY OWNER—COMMISSIONS AND OTHER CHARGES.—Appellant purchased cotton seed for appellee, under a contract which made the former liable for loss of the same, and giving appellant a right to commissions for purchasing and storing the cotton seed, and *held* that under the contract, appellee could not maintain an action in replevin for the seed without paying the appellant the amounts due him as commissions and for storage.

Appeal from Clark Circuit Court, *Geo. R. Haynie*, Judge; reversed.

Appellee brought suit in replevin against appellant in the Clark Circuit Court for about 14 tons of cotton seed in possession of appellant, same being stored in a little house just in the rear of the livery barn of appellant in Arkadelphia. The complaint stated that appellee was the owner of the seed and entitled to the immediate possession thereof, and that the defendant unlawfully detained same, and asked for $50.00 damages for the detention of said seed.

Appellant filed an answer and cross-complaint. The first paragraph of the answer denied that appellee was the owner and entitled to the possession of said seed and denied that he had damaged it in any sum by the retention of said seed. The second paragraph of the answer set out the contract between appellant and appellee, under which the seed were purchased. The contract was made an exhibit to the answer and is as follows:

"Contract between plaintiff and defendant, made on August 11, 1915.

"First: The Oil Company (plaintiff) hereby employs the second party (defendant) and the second party accepts such employment to purchase sound cotton seed for the Oil Co. at Arkadelphia during the season beginning September 15, 1915, ending March 15, 1916; but this contract may be rescinded and terminated at any time by either party by notice to the other party.

"Second: The second party shall receive as compensation a salary of fifty dollars per month, for six months, starting September 15, 1915. On all purchases over two hundred tons, the Oil Company agrees to allow a commission of one dollar and fifty cents per ton. The Oil Co. agrees to allow forty cents per ton to cover house rent and loading on each ton bought for their account.

"Third: The Oil Company to give defendant quotations and instructions as to buying said seed and defendant to give diligent effort to purchasing, and defendant will make daily written reports of said purchases showing quantity, cost of each load on forms furnished by the company; and if defendant can buy seed at prices lower than quotations the Oil Company is to have the benefit.

"Fourth: Defendant not to report seed unless they are actually delivered and deposited in the storage place, and not to purchase any seed for future delivery unless authorized.

"Fifth: The Oil Co. can arrange for cashing seed tickets in the town where purchased, but if the cashing of said tickets cannot be satisfactorily arranged, then the Oil Company will advance such sums of money as it deems proper to defendant, with the understanding that such sums advanced are trust funds to be used and accounted for under the direction of the company and to be used only in the purchase of seed.

"Sixth: The company provides a house for storing of seed purchased by defendant and scales for weighing, which are suitable for the purpose, and defendant is responsible for any loss in weight arising from errors in weighing, theft, drying, handling or any other cause. All seed shipped to the company shall be weighed at such point the company may designate; and defendant is responsible for any difference in weight between what is shown by his reports and the weights at such designated point in excess of the weights shown at said designated point.

"Seventh: Defendant is to keep all seed under lock and key and see that the scales are in good order.

"Eighth: Defendant is to ship seed as directed by the company and to ship all reported purchases and received in storage.

"Ninth: Defendant, during the existence of this contract, will not sell or purchase cotton seed for any other person.

"Tenth: The contract not binding until ratified by Memphis manager of the Southern Cotton Oil Company."

He, in substance, alleged that under this contract he purchased 308 tons of cotton seed and that he was entitled to $1.50 per ton on 110 tons as commission for purchasing same and 40 cents per ton on 308 tons for storage and loading, making a total sum of $288.00 for which he was entitled to a lien on the seed then in his possession. Paragraph 3 of said answer and cross-complaint was in substance the same as paragraph 2, but in the nature of a cross-complaint, asking for $150.00 damages for his wrongful discharge by appellee in addition to the amounts claimed for commissions and storage, making a total claim of $438.00, for which he asked judgment.

A demurrer was filed to the second and third paragraphs of the answer and cross-complaint, which demurrer was sustained by the court and exceptions saved to said ruling by the defendant. In addition to sustaining the demurrer to the two paragraphs of the answer and cross-complaint the court struck out the paragraphs.

The court declined to permit appellant to make a defense under the second and third paragraphs of his answer and cross-bill and sitting as a jury, found for appellee and rendered judgment against appellant for 10 tons of cotton seed and the costs of the suit. Appellant filed his motion for a new trial, which was overruled, exceptions were saved and this cause is brought here on appeal. The motion for a new trial appears in the bill of exceptions and does not appear otherwise as a part of the record in this cause.

*McMillan & McMillan*, for appellant.

1. Defendant had a lien for his commissions and for storage, and the right to retain possession until these were paid. 27 Ark. 90; 58 Am. Dec. 167; 13 *Id.* 298; Story on Agency, § 262; 50 Am. Rep. 378; Am. Cas.

1913 C. 1015; 16 Ark. 90, 92; 31 Am. Dec. 46-48; Paley on Agency, 109; 38 Am. Dec. 292; 22 *Id.* 551.

2.    The facts set up in paragraphs 2 and 3 of the answer were a proper defense and counterclaim. 56 Ark. 250. A counterclaim is proper in replevin. 73 Ark. 464; 60 *Id.* 387; 71 *Id.* 408; Am. Cas. 1913 A. 108.

*John H. Crawford* and *Dwight H. Crawford,* for appellee.

1.    There is no motion for a new trial in the record proper. 43 Ark. 391; 76 *Id.* 400; 27 *Id.* 725; 34 *Id.* 698; 35 *Id.* 536; 72 *Id.* 320; 80 *Id.* 410; 84 *Id.* 342; 91 *Id.* 443; 111 *Id.* 196-211; 83 *Id.* 517. See also 13 Ark. 316; 26 *Id.* 653; 33 *Id.* 830. We cannot look to the bill of exceptions for a motion for a new trial.

2.    A paper stricken from the record can be brought back into the record only by and in the bill of exceptions. 4 Ark. 450; 5 *Id.* 166-7, 179; 6 *Id.* 535-7; 36 *Id.* 484-6; 53 *Id.* 307, 311; 5 *Id.* 223-6.

3.    There was no exception to the action of the court in striking the plea from the files. 4 Ark. 454.

4.    There can be no counterclaim or set-off in replevin. Kirby's Digest, §§ 6853, 6857, 6869.

5.    The counterclaim section of the code is inconsistent with later sections of said code. 22 Nev. 333; 40 Pac. 96; 11 Fed. Cas. 222.

6.    East was not a factor. Story on Ag. (5 Ed.), § 33; 19 Cyc. 115.

7.    Appellant did not offer to make any definite proof of any fact. 88 Ark. 563, 571; 97 *Id.* 564; 123 Ark. 548.

HUMPHREYS, J. (after stating the facts).    Appellee contends that the motion for a new trial has no place in the bill of exceptions and therefore that no motion for a new trial appears in the record and that for this reason the cause should be affirmed.

(1)    Our court held in the case of *Farquharson* v. *Johnson,* 35 Ark. 536, that it was necessary for the motion for a new trial to appear in the bill of exceptions,

and the court could not take notice of it unless it was there. In later cases, the court held that the proper place for a motion for a new trial was in the record and not in the bill of exceptions. Because the court ruled in 35 Arkansas that it could not take notice of a motion for a new trial unless it appeared in the bill of exceptions, it is now contended that since the court holds that the bill of exceptions is not the proper place for a motion for a new trial, the same reasoning should apply and no notice should be taken of the motion for a new trial unless it appeared in the transcript separate and apart from the bill of exceptions. Should we adopt the reasoning of learned counsel, the court would suspend the consideration of this cause and direct a writ of certiorari to bring up the motion for a new trial. This would bring about an unnecessary delay of the case. While the bill of exceptions is not the proper place for the record entries and the pleadings, and while the motion for a new trial is a pleading, yet it is here and we will treat it as transferred to its proper place rather than delay the cause and issue the writ. No contention is made that the motion for new trial is incorrect in any respect.

(2)    It is also contended that when a paragraph is once stricken from a pleading, that the only way to get it back into the record is by saving an exception and getting it back through the route of a bill of exceptions. The case of *Blackmore* v. *President*, 4 Ark. 454, is cited in support of this contention. We do not overrule this case, but hold that when an unnecessary act is done by a trial court, that it is unnecessary to except to it. No motion was filed to strike these paragraphs. They were demurred to, the demurrer was sustained and appellant saved his exceptions. The order sustaining the demurrer was sufficient. The order striking the paragraphs was clearly surplusage.

Having disposed of these technical contentions, we now proceed to a consideration of the real issue in the case. It is conceded by appellee that if appellant was a factor or broker that he would have a right to retain the possession of the cotton seed until his commissions,

advances and expenses were paid. Many authorities are cited in both briefs with reference to the law applicable to brokers and factors. It is unnecessary to discuss these authorities in this opinion. The rights of appellant depend upon the construction of the contract. The contract provides for a commission for purchasing this seed. It also allows 40 cents per ton to cover house rent and loading each ton bought for their account and makes appellant responsible for any loss in weight arising from errors in weighing, theft, drying, handling or for any other cause. It requires appellant to keep the seed under lock and key.

(3) In the case of *Hill* v. *Robinson*, 16 Ark. 93, our court said that cotton could not be recovered in replevin until the party picking and hauling it had been paid for the picking and hauling. It is true in that case that Hill the picker was to pay himself out of the cotton for picking and divide the balance. In the contract before us, it is not specifically agreed that appellant should have a portion of the cotton seed for his work, but it was agreed that he should have a commission for purchasing the seed and 40 cents a ton for loading and storage, and he was required to stand any loss in weights or loss from other causes. Under this provision of the contract if he had this seed in his own house for storage, he was clearly a warehouseman. These provisions in the contract certainly give him some right in the seed. It is conceded by appellee that it could not maintain replevin if appellant was a factor or broker under the terms of this contract. The terms of the contract may not make him technically a factor or broker, but we are convinced that the contract created an interest in or lien on the cotton seed purchased to the extent of the commission due for purchasing the seed and the charges for storing same. Both amounts should be paid by appellee before it could bring a suit in replevin for the seed. Making him responsible for any shortage in weight or loss by theft, drying, handling or any other cause, together with his right to a commission for purchasing same and

the pay for storing same, coupled with possession, takes him out of the category of naked purchasing agents.

This being our view, we think the court erred in sustaining the demurrer to paragraphs two and three of the answer and cross-complaint. For this error the cause is reversed and remanded with instructions to overrule the demurrer and for further proceedings.

